In re Richard W. BALSAMO,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 99–BG–1568.

District of Columbia Court of Appeals.

Argued May 23, 2001.
Decided Aug. 30, 2001.

Richard W. Balsamo, pro se.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

Respondent Richard W. Balsamo, a member of the Bar of the District of Columbia, was suspended from practice for thirty days by the United States Court of Appeals for the District of Columbia Circuit. Our Board on Professional Responsibility (the Board) recommends the reciprocal discipline of respondent under D.C. Bar R. XI, § 11. Respondent argues against the imposition of reciprocal discipline, contending that: (1) he was denied due process, both before the D.C. Circuit and before the Board; and (2) the misconduct, assuming it was established, warrants discipline substantially different from that imposed by the D.C. Circuit. We find respondent's arguments unpersuasive and, therefore, adopt the Board's recommendation and order respondent suspended from practice for thirty days.

## I.

The record reflects that the D.C. Circuit suspended respondent for thirty days for "his repeated failures to meet court deadlines and his misrepresentations to the

Court." The order of suspension issued by the D.C. Circuit states in part:

> Respondent's egregious disregard of this court's process led to the dismissal of his client's appeal. In attempting to justify his late filings, respondent made several misrepresentations to this court.... [R]espondent violated his duty to provide competent representation and engaged in conduct that involved misrepresentation and seriously interfered with the administration of justice.

The D.C. Circuit's decision to suspend respondent was based on a report and recommendation issued by its Committee on Admissions and Grievances which assessed respondent's conduct before the D.C. Circuit. The Committee found that respondent's "failures to meet court-ordered deadlines, his disregard of the Rules of Appellate Procedure, and his failure to cooperate with opposing counsel seriously interfered with the Court's administration of justice...." Regarding respondent's "numerous" misrepresentations, the Committee found:

> First he certified that [his] brief did not exceed the word limitation, when the brief exceeded the limitation by a substantial amount, almost twenty per cent.... [Respondent] represented on May 19, 1996, that he had been out of the District of Columbia since April 23, 1996. However, [respondent] subsequently admitted that he was in town several days during that month.... [Re-

spondent] represented that [his] brief and appendix were complete as of May 15, 1996, when in fact the brief required substantial redrafting, and he had only gathered the documents for the appendix.... [Respondent] represented that he was in Texas taking a deposition on May 4, 1996 when he was in his Washington D.C. office that day taking the deposition by telephone.... [Respondent] attributes these misstatements to mistakes or imprecise wording. The Committee members who heard [respondent's] testimony did not find his explanation convincing and did not believe him....

The Committee, applying this court's Rules of Professional Conduct,[1] concluded that respondent violated Rules 1.1 (competent representation), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (conduct interfering with the administration of justice). The D.C. Circuit imposed the recommended discipline of a thirty-day suspension.

## II.

Under District of Columbia Bar Rules, reciprocal discipline "shall be imposed" unless the respondent attorney demonstrates, by clear and convincing evidence, that one or more of five enumerated circumstances are present.[2] D.C. Bar R. XI, § 11(c); *see also In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). Respondent argues

---

1. *See* D.C.Cir. R.App. II, Rule I(B).

2. D.C. Bar R. XI, § 11(c) states:
   Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
   (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
   (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not,

   consistently with its duty, accept as final the conclusion on that subject; or
   (3) The imposition of the same discipline by the Court would result in grave injustice; or
   (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
   (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

that: (1) the hearing afforded by the D.C. Circuit and its Committee violated his due process rights, *see* D.C. Bar R. XI, § 11(c)(1); and (2) any misconduct by respondent warrants only a public censure, which is substantially different from the thirty-day suspension imposed by the D.C. Circuit, *see* D.C. Bar R. XI, § 11(c)(4). He also argues that our Board failed to afford him the hearing to which he was entitled.

### A.

■ We address first respondent's due process arguments. First, according to respondent, the D.C. Circuit and its Committee on Admissions and Grievances violated his right to due process in that they declined to consider "later discovered evidence" concerning a conflict of interest by the judge who sanctioned respondent in a companion case in the United States District Court for the District of Maryland. The Honorable Frank A. Kaufman sanctioned respondent $20,000 for his conduct during a deposition in a case involving the same parties and issues as the D.C. Circuit case in which respondent's misconduct occurred.[3] At the time of the D.C. Circuit disciplinary proceedings, respondent knew that by January of 1997 Judge Kaufman had a conflict of interest and brought this fact to the attention of the Committee on Admissions and Grievances.[4] After the proceedings, respondent asserted to the D.C. Circuit that he had learned additional information concerning Judge Kaufman's conflict of interest. He requested a re-

mand to the Committee on Admissions and Grievances so that the Committee could consider the significance of the new evidence. Although neither respondent's request to the D.C. Circuit nor that court's order denying the request appears in the record before us, both parties state that the D.C. Circuit denied respondent's request. Respondent now argues that the failure of the Committee and the D.C. Circuit to consider this "later discovered evidence" violated due process.

We are not persuaded. Respondent was aware at the time of the D.C. Circuit's disciplinary proceedings that the conflict of interest had arisen at some point prior to January of 1997. In fact, respondent testified about the sanction and conflict of interest before the Committee on Admissions and Grievances. Under the circumstances, it is not likely that respondent's "later discovered evidence" would have added substantially to the evidence already introduced before the Committee. Nothing in the record before us indicates otherwise. Moreover, it was incumbent upon respondent, who was represented by counsel in the D.C. Circuit's disciplinary proceedings, to request a stay of those proceedings if he needed additional time to develop the evidence more fully. *See, e.g., United States v. Mangieri*, 224 U.S.App. D.C. 295, 309–11, 694 F.2d 1270, 1284–86 (1982) (motion for a new trial based on newly discovered evidence denied because moving party failed to show due diligence in procuring the evidence); *Harris v. United States*, 602 A.2d 1140, 1143 n. 6

**3.** Respondent appealed the sanction order to the United States Court of Appeals for the Fourth Circuit, which affirmed the order.

**4.** Judge Kaufman recused himself from the case by order of January 14, 1997, in which he stated: "Because the law firm of Piper & Marbury is currently representing me in a matter not connected with this case, I am presently not handling anything to do with

any case, including the within case, in which Piper & Marbury is counsel." Piper & Marbury represented the party respondent was suing. The recusal order did not state how long the conflict had existed. The record before us does not indicate whether Judge Kaufman had a conflict of interest at the time he imposed the sanction upon respondent.

(D.C.1992) (same). Respondent made no such request. Accordingly, we conclude that he has not demonstrated to this court, by clear and convincing evidence, that the asserted failure to consider the "later discovered evidence" denied him due process. We are also satisfied that the D.C. Circuit proceedings in all other aspects satisfied due process.

Respondent also argues, citing our decision in *In re Richardson*, 692 A.2d 427 (D.C.1997), that the proceedings before our Board violated his right to due process because the Board refused his request for an "evidentiary hearing with a right to conduct discovery, subpoena witnesses and elicit testimony under oath."

Respondent's reliance upon *In re Richardson* is misplaced. The respondent attorney in *In re Richardson* argued that the same disciplinary process was required for all attorneys charged with misconduct, regardless of whether the Board and this court were considering the imposition of reciprocal discipline. *See id.* at 429–30. This court rejected that argument and held that the reciprocal discipline procedures in this jurisdiction conformed with applicable statutory and constitutional requirements. *See id.* at 430. We explained that in reciprocal discipline matters

> D.C. Bar R. XI, § 11 assures that an *evidentiary* hearing on the alleged misconduct will take place (absent waiver) in the jurisdiction where that conduct occurred, and that the respondent attorney will have an opportunity to be *heard* at a District of Columbia proceeding on whether the evidentiary hearing comported with due process.

*Id.* (emphasis added). The court went on to hold that Richardson had waived his right to an evidentiary hearing in the foreign jurisdiction and, therefore, was deemed to have waived any evidentiary hearing that would otherwise have been required by due process in this jurisdiction. *See id.* at 434.

■ Here, respondent argues that he was denied an evidentiary hearing by the Board on whether the D.C. Circuit proceedings comported with due process.[5] Bar Counsel acknowledges that no evidentiary hearing was held, but argues that respondent was not entitled to one. We agree. This court in *In re Richardson* expressly stated that reciprocal discipline will not be imposed unless an evidentiary hearing is held or waived in the foreign jurisdiction. *See* 692 A.2d at 430. Once such an evidentiary hearing comporting with due process is held, however, as it was in this case, there need not be another such hearing in the District of Columbia. *See id.* Our holding in *In re Richardson* requires only that respondent be given the opportunity to be heard—as opposed to an evidentiary hearing—on his claims in this jurisdiction. The requisite hearing is, as a constitutional matter, "an opportunity to be heard before deprivation of a significant property interest." *See id.* at 430 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). In this case, respondent submitted briefs to the Board in which he set forth his objections to the imposition of reciprocal discipline. Therefore, respondent was afforded a hearing—though not an evidentiary hearing—before the Board.

---

5.  Though respondent uses the term "hearing" and "evidentiary hearing" interchangeably, there is a significant distinction. *See, e.g., In re Cummings*, 466 A.2d 1224, 1225 (D.C.1983) ("The court held that some kind of notice and a hearing must be afforded before an attorney may be [temporarily] suspended.... [The court] did not state, however, that there must be an *evidentiary* hearing....").

In an effort to establish a particular need for an evidentiary hearing before the Board in this case, respondent argues that the Board failed to recognize and appreciate the import of a misunderstanding on the part of the Committee on Admissions and Grievances concerning the sanction imposed by Judge Kaufman. The Circuit Committee's report stated that "Judge Kaufman sanctioned Mr. Balsamo in the amount of $20,000 for his repeated failure to follow court rules and deadlines." In assessing the seriousness of respondent's violations for the purpose of providing a recommendation for sanction, the Committee stated: "Even more disturbing is the fact that Judge Kaufman had previously disciplined Mr. Balsamo for this same kind of misconduct in a parallel action."

Judge Kaufman's order of May 28, 1993, was not entirely clear, however, as to the particular conduct of respondent that occasioned the sanction. At one point the order stated that "Mr. Balsamo has engaged in conduct in this case which 'multiplie[d] the proceedings . . . unreasonably and vexatiously' within the meaning of 28 U.S.C. § 1927, and has filed papers in violation of the requirements of Federal Civil Rule 11. . . ." The order went on to fault respondent's conduct during the deposition of a Mr. Givens and to state that the record was

> full of one instance after another, including right up to the end of the [sanctions] proceeding on May 14, 1993, in which Mr. Balsamo made unsupported statements of fact which could not have been made if Mr. Balsamo had made reasonable inquiry . . . and also in which Mr. Balsamo adopted frivolous legal positions which Mr. Balsamo could not have advanced if he had engaged in reasonable research and consideration. . . .

The order went on to state that it did not necessarily follow that respondent had intentionally lied to the court and opposing counsel, but chided respondent not only for his carelessness regarding factual and legal issues but for his "disregard for deadlines." After noting that opposing counsel's attitude may have contributed to the problems, the order noted that respondent's conduct was "far more egregious" than his opponents'. After concluding that respondent's opponents had not proven certain other alleged misconduct on the part of respondent, Judge Kaufman went on to determine the sanction to be imposed on respondent. In doing so, Judge Kaufman relied solely on the excess costs incurred in connection with the deposition of Mr. Givens as the result of respondent's misconduct during the deposition.

In light of the content of Judge Kaufman's order, it was at least open to respondent to argue that the Committee had not reported the matter accurately when it stated that Judge Kaufman sanctioned respondent "in the amount of $20,000 for his repeated failure to follow court rules and deadlines," but to maintain instead that the sanction was imposed due to his conduct at the Givens deposition. But this is not the first time that respondent has raised the argument that the Committee misapprehended Judge Kaufman's rationale for the sanction. In his brief to the D.C. Circuit, respondent argued against the imposition of a thirty-day suspension. In support of his argument, respondent stressed his view that "Judge Kaufman *did not* sanction Mr. Balsamo for 'late filings' or failure to meet court-imposed deadlines in the Sanctions Order, as contended in the Report and Recommendation [by the Committee] to this Court." Made aware of respondent's argument, the D.C. Circuit nevertheless imposed the recommended thirty-day suspension. Having argued this point before the D.C. Circuit, respondent

is not free to raise it anew in this reciprocal discipline case as a reason that the Board must conduct an evidentiary hearing or, ultimately, as a reason that we should decline to impose here the discipline settled upon by the D.C. Circuit. *See In re Shearin,* 764 A.2d 774, 777 (D.C. 2000); *In re Klein,* 747 A.2d 1179, 1181 (D.C.2000).

### B.

■ Respondent's final argument is that a thirty-day suspension for his misconduct is "substantially different discipline" from that which would have been imposed by this court had this been a matter of original discipline. *See* D.C. Bar R. XI, § 11(c)(4).

■ The Committee found that respondent had violated Rules 1.1 and 8.4(c) and (d).[6] A violation of Rule 1.1 occurs when an attorney fails to provide the client with competent representation. This court generally imposes a public censure or short-term suspension for a violation of Rule 1.1. *See, e.g., In re Shelnutt,* 719 A.2d 96, 96–97(D.C.1998) (imposing a public censure for attorney's failure to serve client with commensurate skill and care, failure to act with reasonable promptness,

and failure to explain matters to client); *In re Bland,* 714 A.2d 787, 787 (D.C.1998) (imposing public censure in neglect case where Rule 1.1(a) & (b) was violated in addition to other rules); *In re Drew,* 693 A.2d 1127, 1127 (D.C.1997) (imposing a sixty-day suspension for violation of Rule 1.1(a) & (b) and several other rules). Public censure is an established sanction for conduct interfering with the administration of justice, Rule 8.4(d), such as was found here. *See, e.g., In re Solerwitz,* 575 A.2d 287 (D.C.1990). For conduct involving "dishonesty, fraud, deceit, or misrepresentation," Rule 8.4(c), the discipline this court has imposed has ranged from censure to disbarment. *See, e.g., In re Hadzi–Antich,* 497 A.2d 1062, 1063 (D.C.1985) (public censure); *In re Slattery,* 767 A.2d 203, 219 (D.C.2001). Where an aggravating element of dishonesty is present, the sanction normally imposed for types of disciplinary violations other than violations of 8.4(c) may be increased. *See, e.g., In re Williams,* 511 A.2d 1045, 1046–47 (D.C. 1986) (imposing suspension of one year rather than lesser sanction in neglect case because of element of dishonesty).

In this case, the D.C. Circuit disciplined respondent for violating Rules 1.1 and 8.4(c) and (d). In its recommendation to

---

**6.** Respondent also argues that reciprocal discipline is inappropriate because the Circuit Committee did not sufficiently prove a violation of either Rules 8.4(c) or (d). *See* D.C. Bar R. XI, § 11(c)(2). Respondent's argument is without merit.

Under Rule 8.4(d), it is misconduct to "[e]ngage in conduct that seriously interferes with the administration of justice." *See also In re Travers,* 764 A.2d 242, 248–49 (D.C.2000). The Committee on Admissions and Grievances found that respondent: (1) failed to meet court-ordered deadlines, (2) disregarded the Rules of Appellate Procedure, and (3) failed to cooperate with opposing counsel. The Committee's conclusion that respondent's conduct violated Rule 8.4(d) is supported by sufficient factual findings.

As for respondent's violation of Rule 8.4(c), the Committee stopped short of finding intentional misrepresentations by respondent, but did find that his conduct "at least approaches dishonesty" and that his innocence was "questionable." Indeed, the Committee "did not believe" respondent's explanations for the misrepresentations. This case is similar to *In re Shorter,* 570 A.2d 760, 768 (D.C.1990), where this court held that the attorney's conduct was "of a dishonest character" and, therefore, his conduct violated DR 1–102(A)(4), the predecessor of the current Rule 8.4(c). Here, respondent's conduct was of a "dishonest character" similar to that in *In re Shorter* and likewise violated Rule 8.4(c).

the D.C. Circuit, the Committee on Admissions and Grievances found several aggravating factors that supported a more severe sanction than a public censure. The fact that respondent's conduct "at least approach[ed] dishonesty" was among the aggravating factors. As the Committee reported, "The Committee members who heard [respondent's] testimony did not find his explanation convincing and did not believe him." We are satisfied that the discipline imposed by the D.C. Circuit is not substantially different from the discipline we would impose. Here, respondent's conduct taken as a whole, and in particular his lack of honesty with the D.C. Circuit, is more serious than those situations in which we have imposed a public censure. We conclude, therefore, that respondent has not demonstrated by clear and convincing evidence that the thirty-day suspension is substantially different from the discipline we would otherwise impose.

### III.

It is ORDERED by the court that respondent Richard W. Balsamo, shall be suspended from the practice of law in the District of Columbia for a period of thirty days, *nunc pro tunc* to November 30, 2000.[7]

*So ordered.*

---

**7.** Respondent filed an affidavit with this court on November 30, 2000, in compliance with D.C. Bar R. XI, § 14(g), and as of December 30, 2000, completed his thirty-day suspension.